UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BORIS KRSTIC and
ALBERT HASANAJ,

                            Plaintiffs,

                - against -

MAUTNER-GLICK CORPORATION and
JASON GLICK,

                            Defendants.

Civil Action No.: 17-CV-_____

**COMPLAINT**

JURY TRIAL DEMANDED

Plaintiffs Boris Krstic and Albert Hasanaj, by and through their attorneys, The Legal Aid

Society and Petrillo Klein & Boxer LLP, allege as follows:

**PRELIMINARY STATEMENT**

1.      This action seeks redress for violations of the federal Fair Labor Standards Act

("FLSA") and the New York Labor Law ("NYLL").  In a fundamental breach of these statutory

obligations, Defendants Mautner-Glick Corporation and Jason Glick (collectively, "Defendants")

failed to pay Plaintiffs Boris Krstic and Albert Hasanaj overtime compensation for the hours they

worked above 40 hours per week as superintendents of several residential apartment buildings

throughout New York City that are owned or managed by the Defendants.  Plaintiffs were only

paid for 40 hours of work per week for their superintendent duties, however, due to the very

large number of buildings each was solely responsible for and the vast number of tasks each was

required to perform for the buildings, Plaintiffs were required to work approximately 73 to 80

hours per week.  However, during the terms of Plaintiffs' employment, Defendants never paid

Plaintiffs overtime compensation for their superintendent duties as required by federal law.

## JURISDICTION AND VENUE

2.	This Court has subject matter jurisdiction over Plaintiffs' claims under the FLSA, 29 U.S.C. § 201 *et seq.*, pursuant to 28 U.S.C. §§ 1331 and 1337.

3.	This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, because these claims are so closely related to Plaintiffs' federal claim that they form part of the same case or controversy under Article III of the U.S. Constitution.

4.	Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

## PARTIES

5.	Plaintiff Boris Krstic is a resident of Queens, in the State of New York.  Mr. Krstic was employed by Defendants as a superintendent for ten residential buildings owned or managed by Defendants. At various times of his employment, Mr. Krstic was the designated superintendent for the buildings located at 332 East 93rd Street, 328 East 93rd Street, 330 East 93rd Street, 334 East 93rd Street, 325 East 93rd Street, 327 East 93rd Street, 313 East 93rd Street, 315 East 93rd Street, 335 East 92nd Street, 175 East 92nd Street, and 443 East 88th Street, all in Manhattan.

6.	Plaintiff Albert Hasanaj is a resident of the Bronx, in the State of New York.  Mr. Hasanaj was employed by Defendants as a superintendent in eight residential buildings owned or managed by Defendants.  At various times of his employment, Mr. Hasanaj was the designated superintendent for the buildings located at 324 East 91st Street, 312 East 91st Street, 314 East 91st Street, 1731 2nd  Ave, 315 East 89th Street, 317 East 89th Street, 318 East 89th Street, and 322 East 89th Street, all in Manhattan.

7.      At all times during their employment, Mr. Krstic and Mr. Hasanaj were "employees" as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1), and Defendants were their "employers" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

8.      Upon information and belief, Defendant Mautner-Glick Corporation is a corporation organized and existing under the laws of the State of New York with its principal executive offices located at 1345 Third Avenue, New York, New York, 10075.  Defendant Mautner-Glick Corporation owns and manages residential apartment buildings throughout New York City.

9.      Upon information and belief, Defendant Jason Glick is a Vice President of Mautner-Glick Corporation.  Mr. Glick was responsible for hiring the Plaintiffs, assigning their duties and responsibilities, supervising Plaintiffs' work, and determining their compensation.

10.      Upon information and belief, the above Defendants are registered as doing business as realty companies or agents in New York and as such, operate for a common business purpose, making up an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(A), 29 U.S.C. § 203(s)(1)(A), in that the Defendants' employees are engaged in interstate commerce and Defendants' annual gross volume of sales made or business done exceeds $500,000, exclusive of excise taxes.

11.      Defendants employed Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(g), and the NYLL.  At all times relevant to this action, Defendants were Plaintiffs' employers, as Defendants hired, supervised, controlled, and paid Plaintiffs for performing superintendent services and duties.

**FACTUAL ALLEGATIONS**

**Boris Krstic**

12.     In June 2015, Defendants offered Mr. Krstic employment as a superintendent of eight buildings on the Upper East Side of Manhattan.  According to a June 18, 2015 email from Defendant Jason Glick to Mr. Krstic, Mr. Krstic's salary would be "$47,500/annum, payable bi-monthly, based on 40 hour/week work schedule."  Mr. Krstic's compensation also included a one-bedroom apartment, paid health insurance, and two weeks of paid vacation after six months of employment.  At the time of his hire, Defendant Jason Glick verbally informed Mr. Krstic that he may also assign Mr. Krstic two "co-op" buildings as well, and promised Mr. Krstic an additional $500 per month for his services at those buildings.

13.     According to an email from Defendant Jason Glick, Mr. Krstic's responsibilities were "cleaning, household refuse and recyclable collections/management, tenant complaint management, basic repair and maintenance of building common areas and apartments, emergency response, coordination of access for outside contractors, ordering and control of building supplies among other general responsibilities."

14.     Defendant Jason Glick also told Mr. Krstic by email that Defendant Mautner-Glick "prefer[s] using in house employees to prepare apartments and handle other improvements.  We are willing to pay you overtime for such work, or arrange a contract outside the scope of your position.  Overtime is paid as 1.5X hourly rate, or $34.25/hour.  Paint and supplies would be paid for by the building."

15.     On or about July 2015, Mr. Krstic began working for Defendants as the superintendent for ten buildings (which included the two co-op buildings), which all together contained approximately 150 units.  Mr. Krstic's responsibilities in the majority of the buildings included but were not limited to sorting and moving the garbage and recycling several times per

4

day to comply with New York City regulations, cleaning the buildings' halls, stairwells and sidewalks, granting access to and monitoring outside vendors, maintaining the boiler, and responding to tenant calls. On average, Mr. Krstic received 4-5 tenant calls per day involving such tasks including, but not limited to, repairing leaks, fixing faulty showers, toilets, sinks, and faucets, patching holes in ceilings and walls, and opening apartments for locked out tenants. Mr. Krstic was expected to complete these same duties for every building in which he was designated as the superintendent. Mr. Krstic would constantly move from one building to the next to complete the required tasks at each building. Mr. Krstic had no porter or other individual to assist him on a regular basis in his duties or to provide any other services for the buildings.

16.     Mr. Krstic typically worked seven days per week. From Monday through Friday, Mr. Krstic usually worked approximately fourteen and a half hours per day, beginning work at approximately 5:30 A.M. and ending work approximately at 8:00 P.M. Mr. Krstic frequently worked the entire day without taking any meaningful breaks. In addition, Mr. Krstic regularly worked approximately 4 hours per day on both Saturday and Sunday. Therefore, Mr. Krstic worked approximately 80 hours per week to complete his superintendent duties for all ten buildings.

17.     As discussed above, as compensation for his work at two "co-op" buildings located at 325 East 93rd Street and 327 East 93rd Street (as distinct from the rental buildings that Mr. Krstic was the superintendent for), Defendant Jason Glick promised Mr. Krstic an extra $500/month. According to an August 13, 2015 email from Defendant Jason Glick confirming their prior discussion, "[t]he monthly lump payment for these buildings, which is essentially separate work from the main position I've hired you for, is $500/month. This equates to roughly 22 hours of work [per month] at your current pay rate." Defendant Jason Glick informed Mr.

Krstic that "[a]ny work in the apartments, or around the building are not part of your responsibilities under this sum, but if you do any maintenance, you can certainly bill for such with Glen's approval."

18.     However, according to the email, Mr. Krstic's tasks at these buildings were very similar to all of the other buildings he worked at including, but not limited to, handling the garbage/recycling collection, flushing the boiler regularly in the winter, and cleaning the buildings weekly.  Indeed, Mr. Krstic was regularly called upon by Defendants and individual tenants to engage in activities that were above and beyond what Defendant Jason Glick originally had represented would be Mr. Krstic's responsibilities, and Mr. Krstic in fact performed superintendent duties for these two buildings.  Furthermore, the time Mr. Krstic spent to care for the two co-op buildings far exceeded the 22 hours a month that Defendant Jason Glick anticipated.

19.     At some time during his employment, Mr. Krstic received $1,500 for 3 months of work on the two co-op buildings located at 325 East 93rd Street and 327 East 93rd Street. However, despite Mr. Krstic's continued work at those buildings, Defendants failed to continue to pay Mr. Krstic $500 per month as required by the terms of the agreement.

20.     Mr. Krstic repeatedly told Defendant Jason Glick that he was working far in excess of 40 hours per week and that he was having difficulty completing all of the work despite constantly working throughout the day and working weekends.

21.     Despite the fact that Mr. Krstic frequently worked in excess of 40 hours per week to complete his superintendent duties, Defendants never paid Mr. Krstic overtime compensation, as required by federal law, except the limited overtime pay Mr. Krstic received as described in paragraphs 26-27 below.

22.     Further, Defendants required Mr. Krstic to spend his own money on work-related expenses such as a cell phone.  Defendants expected Mr. Krstic to be on-call during the evenings and weekends and available any time for its building tenants.  Indeed, Mr. Krstic's name and phone number was listed as the designated superintendent and as an emergency contact for all the tenants in the residential buildings in which he worked.  Although Defendants eventually provided Mr. Krstic a cell phone, tenants still called Mr. Krstic on his personal cell phone.

23.     Upon information and belief, Defendants did not make and preserve a record of the hours worked by Mr. Krstic.  Further, Defendants generated paystubs for Mr. Krstic that were inaccurate in that the paystubs stated Mr. Krstic worked 0 hours per week when he actually worked more than 40 hours per week, and employers are required to state on pay stubs the actual number of hours worked for non-exempt employees.

24.     In addition to his regular work as a superintendent, Mr. Krstic also performed work as a contractor "prepar[ing] apartments and handl[ing] other improvements" as described in Defendant Jason Glick's June 18, 2015 email.  Mr. Krstic cleaned and painted several apartments and performed other contractor work, often so that the apartments would be ready for a move-in. Mr. Krstic also performed contractor work in apartments in the "co-op" buildings, which Defendant Jason Glick had informed Mr. Krstic he could "certainly bill for [] with Glen's approval."  These duties were separate from Mr. Krstic's responsibilities as a superintendent, or in Defendant Jason Glick's words, "outside the scope of your position."

25.     Defendants terminated Mr. Krstic's employment without cause in February 2016.

26.     After the termination of his employment, Mr. Krstic complained that he did not receive any payment for the contracting work that he performed during the course of his employment.  Mr. Krstic therefore submitted an invoice of "overtime" for contracting work he

performed based on the best of his recollection, and which also included a small amount of overtime for superintendent work, such as an entire weekend he spent shoveling and cleaning snow. Mr. Krstic invoiced for 77 hours of work (plus $50 in expenses) over a seven month period and Defendants paid Mr. Krstic for the hours he placed on the invoice.

27. The "overtime" hourly rate Mr. Krstic received based on this invoice for 77 hours was below the legally required overtime rate under federal law because it did not include the reasonable value of Mr. Krstic's apartment when determining his regular rate of pay. *See* 29 C.F.R. § 778.116.

28. Any payment at an "overtime" rate that Mr. Krstic received for the work he performed while employed by Defendants was for the contracting work he invoiced and for a small number of overtime hours that he sought for his superintendent duties. However, Mr. Krstic was not compensated for the approximately 40 hours of overtime hours he worked every week throughout the course of his employment to complete his superintendent duties.

**Albert Hasanaj**

29. In January 2015, Defendants offered Mr. Hasanaj employment as a superintendent of eight buildings on the Upper East Side of Manhattan. According to a New York "Notice and Acknowledgment of Pay Rate and Payday", Mr. Hasanaj's compensation was $47,500 per year for "40" "weekly hours." Mr. Hasanaj's compensation also included a two-bedroom apartment, health insurance reimbursement, and two weeks of paid vacation after six months of employment.

30. According to the Wage Notice, Mr. Hasanaj's overtime pay rate was $34.25/hour. However, this overtime hourly rate was below the legally required overtime rate under federal

law because it did not include the reasonable value of Mr. Hasanaj's apartment when determining his regular rate of pay. *See* 29 C.F.R. § 778.116.

31.     On or about February 6, 2015, Mr. Hasanaj began his employment as the sole superintendent of four buildings. As soon as his employment began, Mr. Hasanaj needed to work overtime to complete his required duties.

32.     In or about the end of February 2015 or early March 2015, Defendants assigned Mr. Hasanaj as the sole superintendent at two additional buildings. Approximately two weeks later, Defendants assigned Mr. Hasanaj as the sole superintendent at an additional two buildings. Therefore, within a few weeks of his start date, Mr. Hasanaj was the sole superintendent of eight apartment buildings, totaling approximately 160 units.

33.     Mr. Hasanaj's responsibilities in the majority of the buildings included, but were not limited to, sorting and moving the garbage and recycling several times per day to comply with New York City regulations, cleaning the buildings' halls, stairwells and sidewalks, granting access and monitoring outside vendors, maintaining the boiler, and responding to tenant calls. Mr. Hasanaj often received 4-5 tenant calls per day to handle such tasks including, but not limited to, repairing leaks, fixing faulty showers, toilets, sinks, and faucets, patching holes in ceilings and walls, removing cabinets, opening apartments for locked out tenants, and changing locks. Mr. Hasanaj would constantly move from one building to the next to complete the required tasks at each building. Mr. Hasanaj had no porter or other individual to assist him in his duties or to provide any other services for the buildings.

34.     Mr. Hasanaj typically worked seven days per week. From Monday through Friday, Mr. Hasanaj usually worked approximately thirteen hours per day, beginning work at approximately 5:30 A.M. and ending work at approximately 6:30 P.M. Mr. Hasanaj often

worked until 8:00PM on Fridays because of garbage and recycling collection on Saturdays in New York City. Mr. Hasanaj frequently worked the entire day without taking any meaningful breaks. Mr. Hasanaj usually worked approximately 3 hours per day on both Saturday and Sunday. Mr. Hasanaj typically worked approximately 73 hours per week.

35. Mr. Hasanaj repeatedly told Defendant Jason Glick that he was working far in excess of 40 hours per week to complete his superintendent duties. Within the first few weeks of his employment, after Mr. Hasanaj submitted a sheet documenting his actual overtime hours worked for his superintendent duties, Defendant Jason Glick told Mr. Hasanaj that Mr. Hasanaj could submit his overtime, but that he would not pay more than a certain number of overtime hours per day and that Mr. Hasanaj's sheet listed too many hours.

36. Thereafter, approximately once per month, Mr. Hasanaj would deliver to Defendants' office time sheets listing the overtime he requested to be paid for. However, because Defendant Jason Glick told Mr. Hasanaj when he initially submitted an overtime sheet that he had submitted too many hours of overtime and that he would not pay that many hours, Mr. Hasanaj submitted overtime sheets for less than the actual amount of overtime he actually worked.

37. Despite the fact that Mr. Hasanaj frequently worked in excess of 40 hours per week and submitted overtime time sheets, Defendants never paid Mr. Hasanaj overtime compensation for his superintendent duties, as required by federal law.

38. Upon information and belief, Defendants did not make and preserve a record of the hours worked by Mr. Hasanaj. Further, Defendants generated paystubs for Mr. Hasanaj that were inaccurate in that the paystubs stated Mr. Hasanaj worked 0 hours per week when he

actually worked more than 40 hours per week, and employers are required to state on pay stubs the actual number of hours worked for non-exempt employees.

39.     Further, Defendants required Mr. Hasanaj to spend his own money on work-related expenses such as a cell phone.  Defendants never reimbursed Mr. Hasanaj for these expenses.

40.     In addition to his regular work as a superintendent, Mr. Hasanaj also performed contracting work to prepare vacant apartments for incoming tenants.  Mr. Hasanaj primarily cleaned and painted these apartments, and performed other contractor work so that the apartments would be ready for a move-in.  These duties were separate from Mr. Hasanaj's responsibilities as a superintendent.

41.     Although Defendants made payment on some of this contracting work that Mr. Hasanaj performed, Defendants failed to compensate Mr. Hasanaj for the actual amount of hours he worked completing this separate contracting work because Defendant Jason Glick directed that Mr. Hasanaj be paid for less hours than he invoiced.

42.     The "overtime" hourly rate Mr. Hasanaj received for some of the contracting work he performed was below the legally required overtime rate under federal law because it did not include the reasonable value of Mr. Hasanaj's apartment when determining his regular rate of pay.  *See* 29 C.F.R. § 778.116.

43.     In or about the summer of 2016, Defendants or their agents insisted that Mr. Hasanaj repair a stove even though Mr. Hasanaj insisted that he was not qualified to conduct that repair.  During the repair, the stove exploded and Mr. Hasanaj had to be treated by paramedics and the Fire Department.  In addition, the air quality in the apartment supplied by the Defendants

was extremely poor due to fumes coming from the ground floor commercial tenant. Mr.

Hasanaj's family suffered health consequences as a result of living in this apartment.

44.     Due to the unsafe working conditions Defendants created on Mr. Hasanaj, the

hazardous condition of Mr. Hasanaj's apartment, and Defendants failure to properly compensate

Mr. Hasanaj as required by law, Mr. Hasanaj resigned his employment in August 2016.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:
### VIOLATION OF THE OVERTIME PROVISIONS OF THE FAIR LABOR STANDARDS ACT

(On behalf of all Plaintiffs against all Defendants)

45.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding

paragraphs.

46.     Section 7(a) of the FLSA, 29 U.S.C. § 207(a), provides that no employer engaged

in commerce shall employ an employee for a workweek longer than forty hours unless such

employee receives compensation for his employment in excess of 40 hours at a rate not less than

one and one-half times his regular rate of pay at which he is employed.

47.     29 C.F.R. § 778.116 provides that the reasonable value of lodging provided by an

employer must be added to cash wages when determining the regular rate of pay.

48.     Section 16 of the FLSA, 29 U.S.C. § 216(b), provides that any employer who

violates the provisions of 29 U.S.C. § 207 shall be liable to the employee or employees affected

in the amount of their unpaid overtime compensation, as the case may be, and in an additional

equal amount as liquidated damages.

49.     Plaintiffs are not exempt from the overtime requirements of the FLSA. 29 U.S.C.

§ 213.

50. Defendants knowingly failed to compensate Plaintiffs the extra wages due for hours worked in excess of forty hours per workweek for all weeks that they worked in excess of forty hours, in violation of 29 U.S.C. § 207(a) and accompanying United States Department of Labor regulations. Any payments that Defendants made at an overtime hourly rate (primarily for contracting work that was separate and apart from Plaintiffs' superintendent work) was below the legally required overtime rate under federal law because it did not include the reasonable value of Plaintiffs' apartment when determining their regular rate of pay

51. Defendants' failure to pay Plaintiffs overtime compensation was willful and intentional. Defendants did not make a good-faith effort to comply with the FLSA with respect to their compensation of Plaintiffs.

52. Plaintiffs are entitled to an award of damages for unpaid overtime wages in an amount to be determined at trial and to an equal amount in liquidated damages, as well as reasonable attorneys' fees, and costs of this action pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF:**
**FAILURE TO PAY AGREED UPON WAGES**

(On behalf of all Plaintiffs against all Defendants)

53. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

54. NYLL § 190(1), *et seq.* requires employers to pay agreed upon wages for every hour worked.

55. Defendants agreed to pay Mr. Krstic $500 per month in exchange for Mr. Krstic performing superintendent duties at two "co-op" buildings managed by Defendants. During the course of Mr. Krstic's employment, Defendants failed to pay Mr. Krstic the agreed upon wages in violation of NYLL § 190, *et seq*, by intentionally failing to continue paying Mr. Krstic the

additional $500 per month even though Mr. Krstic continued to perform his duties at these two buildings.

56.     Defendants failed to pay Mr. Hasanaj the agreed upon wages for every hour worked, in violation of NYLL § 190, *et seq*, by intentionally compensating Mr. Hasanaj for fewer hours than he actually spent to complete the contracting work.

57.     As a result of the foregoing, both Mr. Krstic and Mr. Hasanaj are entitled to the difference between what they were paid and what Defendants agreed to pay them, and to an equal amount in liquidated damages, as well as interest, reasonable attorneys' fees, and costs of this action pursuant to NYLL § 663.

### THIRD CLAIM FOR RELIEF:
### ILLEGAL DEDUCTIONS

(On behalf of all Plaintiffs against all Defendants)

58.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

59.     NYLL § 193 prohibits an employer from making "any deduction from the wages of an employee, except deductions which . . . are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency [or] are expressly authorized in writing by the employee and are for the benefit of the employee." New York State regulations list "[e]mployee purchases of tools, equipment and attire required for work" as prohibited deductions. 12 NYCRR Part 195-4.5(b).

60.     Defendants took illegal deductions from Plaintiffs by requiring Plaintiffs to have cellular telephone and mobile phone plans to respond to tenant calls but failing to reimburse Plaintiffs for those expenses.

61.     As a result of Defendants violation of NYLL § 193, Plaintiffs are entitled to the out-of-pocket expenses they incurred for cellular telephone and mobile phone plans, and to an equal amount in liquidated damages, as well as interest, reasonable attorneys' fees, and costs of this action pursuant to NYLL § 663.

## FOURTH CLAIM FOR RELIEF:
### FAILURE TO PROVIDE COMPLETE STATEMENT
### WITH EVERY PAYMENT OF WAGES

(On behalf of all Plaintiffs against all Defendants)

62.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

63.     Effective April 11, 2011, NYLL § 195(3) requires employers to provide a statement with every payment of wages listing, among other things, "rate or rates of pay and basis thereof, . . . the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."

64.     Defendants failed to provide Plaintiffs with accurate wage statements as required by NYLL § 195(3) because Defendants failed to record the amount of hours Plaintiffs actually worked.

65.     As a result of the defendants' violation of NYLL § 195(3), Defendants must pay each Plaintiff statutory damages of "two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." *See* NYLL § 198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment:

a)     Declaring that Defendants have violated the FLSA and the NYLL;

b)      Awarding overtime pay, plus liquidated damages, for violations of the FLSA, and regulations thereunder;

c)      Awarding unpaid wages, plus liquidated damages, for violations of the NYLL, and regulations thereunder;

d)      Awarding compensatory damages for illegal deductions, plus liquidated damages, in violation of the NYLL, and regulations thereunder;

e)      Awarding statutory damages for failure to provide an accurate statement with every payment of wages;

f)      Awarding reasonable attorneys' fees, costs, and expenses pursuant to 29 U.S.C. § 216(b) and NYLL § 663;

g)      Awarding pre-judgment interest to the extent allowed by law; and

h)      Awarding such other relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial

by jury on all questions of fact raised by the complaint.


Dated: New York, New York
       January 26, 2017

By: _____

Seymour W. James, Jr., Attorney-in-
  Chief
Adriene Holder, Attorney-in-
  Charge, Civil Practice
Karen Cacace, Director, Employment
Law Unit
Amy Hong, of Counsel
LEGAL AID SOCIETY
199 Water Street - 3rd Floor
New York, New York 10038
Telephone: (212) 577-3626
amhong@legal-aid.org

Philip N. Pilmar
PETRILLO KLEIN & BOXER LLP
655 Third Avenue - 22nd Floor
New York, New York 10017
Telephone: (212) 370-0330
ppilmar@pkbllp.com

*Attorneys for Plaintiffs Boris Krstic and
Albert Hasanaj*

## SECTION 216(b) FAIR LABOR STANDARDS ACT AUTORIZATION

I, Boris Krstic, hereby consent to be a plaintiff in a lawsuit pursuant to Section 216(b) of the Fair Labor Standards Act.

Dated: New York, New York
      October 27, 2016

_____

Boris Krstic

Sworn to me before this 27 day of
October, 2016

_____
NOTARY PUBLIC

LAUREN BAATZ
NOTARY PUBLIC-STATE OF NEW YORK
No. 01BA6341596
Qualified In New York County
My Commission Expires 06-13-2020

## SECTION 216(b) FAIR LABOR STANDARDS ACT AUTORIZATION

I, Albert Hasanaj, hereby consent to be a plaintiff in a lawsuit pursuant to Section 216(b) of the Fair Labor Standards Act.

Dated: New York, New York
       October 26 , 2016

_____
        Albert Hasanaj

Sworn to me before this 26 day of
October, 2016

_____
NOTARY PUBLIC

LAUREN BAATZ
NOTARY PUBLIC-STATE OF NEW YORK
No. 01BA6341596
Qualified In New York County
My Commission Expires 06-13-2020